# UNITED STATES COURT OF INTERNATIONAL TRADE

<table>
<tr><td>

MAPLE TRADE COPRORATION,

                        Plaintiff,

    v.

UNITED STATES OF AMERICA; THE UNITED STATES TRADE REPRESENTATIVE; U.S. CUSTOMS & BORDER PROTECTION,

                    Defendants.

</td><td>

**Court No. 1:25-cv-00093**

</td></tr>
</table>

## COMPLAINT

Plaintiff, MAPLE TRADE CORPORATION ("Plaintiff"), by and through its undersigned counsel, alleges and states as follows:

1.    This action concerns Defendants undertaking of a trade war not authorized by the narrow parameters of U.S. statutory authority found at Section 301 of the Trade Act of 1974 ("Trade Act"); specifically, Defendants' untimely and unauthorized imposition of the third and fourth rounds of tariffs on products imported from the People's Republic of China and covered by the so-called "List 3" and "List 4." *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,974 (Sept. 21, 2018); *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43,304 (Aug. 20, 2019).

2.    The Office of the United States Trade Representative ("USTR") conducted an investigation into China's unfair intellectual property policies and practices pursuant to Section 301 of the Trade Act (19 U.S.C. § 2411).   The investigation was initiated on August 18, 2017.

3.    Section 304 of the Trade Act (19 U.S.C. § 2414) requires USTR to determine what action to take as a result of such an investigation, if any, within 12 months after initiation of that investigation.  *See* 83 Fed. Reg. 47,974.  The List 4 tariffs were implemented on August 20, 2019.  *See* 84 Fed. Reg. 43,304.

4.    USTR therefore failed to issue List 3 and List 4 within the statutory 12-month period.

5.    "Modification" authority under Section 307 of the Trade Act (19 U.S.C. § 2417) does not permit USTR to expand the imposition of tariffs to other imports from China for reasons that are unrelated to the scope of the investigation, and therefore does not provide authority for the List 3 and List 4 tariffs, which were expressly promulgated in response to China's retaliatory duties and other issues unrelated to the scope of the Section 301 investigation. Yet, USTR did promulgate the List 3 and List 4 duties.

6.    These decisions to impose and then alter the tariff rates were in response to China's retaliatory duties and other issues unrelated to the original grounds for the

Section 301 measures.

7.      The arbitrary manner in which Defendants implemented the List 3 and List 4 tariff actions also violates the Administrative Procedure Act ("APA"). Defendants failed: (1) to provide sufficient opportunity for comment, *e.g.*, requiring interested parties to simultaneously submit affirmative *and* rebuttal comments *on the same day*; (2) to consider relevant factors required by the statue when making its decision, *e.g.*, undertaking no analysis of the supposed "burden" imposed on U.S. commerce by China's unfair policies and practices that it originally investigated; and (3) to justify its decision to the record of the agency proceeding, e.g., USTR made no mention of how the 6,000 comments made on List 3 and the 3,000 comments received on List 4 impacted its decision-making in the promulgation of either List 3 or List 4, in violation of the APA's standards.

8.      Therefore, this complaint seeks declaratory judgment that Defendants' actions are *ultra vires* and otherwise contrary to law., and in violation of the Administrative Procedure Act and the United States Constitution.  Defendants should be required to refund all duties collected under Lists 3 and List 4 as applicable to Plaintiff, including interest accrued.

## JURISDICTION

9.    Subject matter jurisdiction exists in this action under 28 U.S.C. §

1581(i)(1)(B), which confers "exclusive jurisdiction" to the Court over "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for … tariffs, duties, fees, or other taxes on the importation of merchandise for reason other than the raising of revenue." 28 U.S.C. § 1581(i)(1)(B).  The List 3 and List 4 tariffs that are the subject of this action are tariffs for reasons other than the raising of revenue, and therefore the Court has jurisdiction over this matter.

## **PARTIES**

10.    Plaintiff is a U.S. importer of various goods subject to Section 301 tariffs on List 3 and List 4.

11.    Defendant United States of America imposed, assessed, and collected the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

12.    USTR is an executive agency of the United States charged with investigating a foreign country's trade practices under Section 301 of the Trade Act and implementing "appropriate" responses, subject to the direction of the President. USTR conducted the Section 301 investigation at issue and made numerous decisions regarding List 3 and List 4a.

13.    Defendant U.S. Customs & Border Protection ("CBP") is the agency

that collects duties on imports. CBP collected payments made by Plaintiff to account for the tariffs imposed by USTR under Lists 3 and 4a.

## STANDING

14.    Plaintiff has standing to sue under 5 U.S.C. § 702 because, as the importer of record for goods subject to retaliatory duties under Lists 3 and/or 4A, it was "adversely affected or aggrieved" by Defendants' unlawful imposition of those duties.

15.    28 U.S.C. § 2631(i) states that "[a]ny civil action of which the Court of International Trade has jurisdiction . . . may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of Section 702 of title 5."

16.    The tariffs imposed and collected by Defendants pursuant to List 3 and/or List 4 adversely affected and aggrieved Plaintiff by requiring the payment of unlawful duties.

## TIMELINESS OF THE ACTION

17.    Plaintiff has commenced this action under 28 U.S.C. § 1581(i)(1)(B) "within two years after the cause of action first accrued." 28 U.S.C. § 2636(i).

## RELEVANT LAW

18.    Section 301 of the Trade Act authorizes USTR to investigate a foreign

country's trade practices for "unreasonable or discriminatory" practices. 19 U.S.C. § 2411(b). Once an investigation shows such practices exist, USTR may impose appropriate tariffs on imports from the country that engaged in the unfair practice. *Id*., § 2411(b), (c)(1)(B).

19. Section 304 of the Trade Act requires USTR to determine its course of action within 12 months after the initiation of the underlying investigation. *Id.* § 2414(a)(1)(B), (2)(B).

20. Section 307 of the Trade Act allows USTR to "modify or terminate" actions already taken under Section 301 of the Trade Act either when the "burden or restriction on United States commerce" imposed by the foreign country's practice has either "increased or decreased" or when the action "is no longer appropriate." 19 U.S.C. § 2417(a)(1)(B), (C). New measures are not authorized by this provision.

21. 5 U.S.C. § 706(2) provides that a court may hold unlawful and set aside agency actions, findings and conclusions found to be –

(A)    arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B)    in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(C)    without observance of procedure required by law;

(D)    unsupported by substantial evidence in a case subject to section 556 and

557 of this title or otherwise reviewed on the record of an agency hearing provided by statute.

22.    U.S. Const. art I, § 8 provides that the power to "lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common defence and general Welfare of the United States" is vested solely in Congress.

## PROCEDURAL HISTORY

### I.    USTR's Investigation

23.    On August 14, 2017, former President Trump directed USTR to consider initiating an investigation pursuant to Section 301(b) of the Trade Act concerning China's laws, policies, practices, and actions related to intellectual property, innovation, and technology. *Addressing China's Laws, Policies, Practices, and Actions Related to Intellectual Property, Innovation, and Technology*, 82 Fed. Reg. 39,007 (Aug. 17, 2017). The purpose of the investigation was to determine whether Chinese laws, policies, and actions related to intellectual property, innovation, and technology may "inhibit United States exports, deprive United States citizens of fair remuneration for their innovations, divert American jobs to workers in China, contribute to our trade deficit with China, and otherwise undermine American manufacturing, services, and innovation." *Id.*

24.    Four days later, on August 18, 2017, USTR formally initiated its

investigation into "whether acts, policies, and practices of the Government of China related to technology transfer, intellectual property, and innovation are actionable under [Section 301(b) of] the Trade Act." *Initiation of Section 301 Investigation; Hearing; and Request for Public Comments:  China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 82 Fed. Reg. 40,213 (Aug. 24, 2017).

25.    Seven months later, on March 22, 2018, USTR published its findings that certain "acts, policies, and practices of the Chinese government related to technology transfer, intellectual property, and innovation are unreasonable or discriminatory and burden or restrict U.S. commerce." OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Findings of the Investigation Into China's Acts, Policies, And Practices Related to Technology Transfer, Intellectual Property, and Innovation Under Section 301 of The Trade Act of 1974* (Mar. 22, 2018), *available at* https://ustr.gov/sites/default/files/Section%20301%20FINAL.PDF.

26.    USTR based its findings on (1) China's use of foreign ownership restrictions, foreign investment restrictions, and administrative licensing and approval processes to pressure technology transfers from U.S. to Chinese companies, *id*. at 45; (2) China's use of licensing processes to transfer technologies from U.S. to Chinese companies on terms that favor Chinese recipients, *id*. at 48; (3) China's facilitation of systematic investment in, and acquisition of, U.S. companies

and assets by Chinese entities to obtain technologies and intellectual property for purposes of large-scale technology transfer, *id*. at 147; and (4) China's cyber intrusions into U.S. computer networks to gain access to valuable business information, *id*. at 171.  In its report, USTR did not quantify the burden or restriction imposed on U.S. commerce by the investigated practices.

27.    On the same date, USTR published a "Fact Sheet" stating that "[a]n interagency team of subject matter experts and economists estimates that China's policies result in harm to the U.S. economy of at least $50 billion per year."  OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Section 301 Fact Sheet* (Mar. 22, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/fact-sheets/2018/march/Section-301-fact-sheet. USTR also indicated that, consistent with a directive from former President Trump, it would "propose additional tariffs" of 25% *ad valorem* "on certain products of China, with an annual trade value commensurate with the harm caused to the U.S. economy resulting from China's unfair policies." *Id.; see also, Actions by the United States Related to the Section 301 Investigation of China's Laws, Policies, Practices, or Actions Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 13,099 (Mar. 27, 2018).

## II.    Lists 1 & 2

28.    Between April and August of 2018 (*i.e.*, within the 12-month statutory deadline from the initiation of the investigation in August 2017, *see* 19 U.S.C. §

2414(a)(2)(B)), Defendants undertook a series of actions to remedy the estimated harm to the U.S. economy caused by the investigated unfair practices. The U.S. government ultimately imposed Section 301 tariffs on imports from China covered by the so-called Lists 1 and 2.

29.     On April 6, 2018, USTR published notice of its intent to pursue tariffs on the first tranche of merchandise subject to an additional duty of 25 percent. *Notice of Determination and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 83 Fed. Reg. 14,906, 14,907 (Apr. 6, 2018). The products on the proposed list covered 1,333 tariff subheadings with a total value of "approximately $50 billion in terms of estimated annual trade value for calendar year 2018." *Id.* at 14,907. USTR explained that $50 billion was "commensurate with an economic analysis of the harm caused by China's unreasonable technology transfer policies to the U.S. economy, as covered by USTR's Section 301 investigation." OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE *Under Section 301 Action, USTR Releases Proposed Tariff List on Chinese Products* (Apr. 3, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/april/under-section-301action-ustr.

30.     On June 20, 2018, USTR published notice of its final list of products

subject to an additional duty of 25% *ad valorem*, a list commonly known as "List 1." *Notice of Action and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 28,710 (June 20, 2018). USTR explained that it had "narrow[ed] the proposed list in the April 6, 2018 notice to 818 tariff subheadings, with an approximate annual trade value of $34 billion." *Id*. at 28,711.

31.     USTR also announced that it intended to impose a 25% *ad valorem* duty on a second proposed list of Chinese products to "maintain the effectiveness of [the] $50 billion trade action". *Id.* at 28,712. USTR announced a proposed "List 2" covering 284 tariff subheadings with "an approximate annual trade value of $16 billion." *Id.* at 28,711-12.

32.     On August 16, 2018, USTR published notice of the final list of products subject to an additional duty of 25% *ad valorem* in List 2, encompassing "279 tariff subheadings" whose "annual trade value . . . remains approximately $16 billion." *Notice of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 40,823, 40,823-24 (Aug. 16, 2018).

## III.     List 3 and List 4

33.     Following USTR's announcement of the results of its investigation in

March 2018, tensions between the governments of China and the United States escalated. In the months that followed, Defendants expanded the scope of the tariffs imposed under Section 301 of the Trade Act to cover imports worth more than $500 billion – ten times the amount it had deemed "commensurate" with the findings of USTR's original investigation. Defendants did so for reasons untethered to the unfair practices that USTR had investigated.

### A. <u>List 3</u>

34.    After former President Trump directed USTR in April 2018 to consider imposing duties on $50 billion in Chinese products, China immediately threatened to impose retaliatory 25% tariffs on $50 billion of U.S. exports, targeting key sectors. In response, former President Trump "instructed USTR to consider whether $100 billion of additional tariffs would be appropriate under Section 301" due to "China's unfair retaliation." THE WHITE HOUSE, *Statement from Donald J. Trump on Additional Proposed Section 301 Remedies* (Apr. 5, 2018), *available at* https://www.whitehouse.gov/briefings-statements/statement-president-donald-j-trump-additional -proposed-section-301-remedies/.

35.    On June 18, 2018, former President Trump acknowledging that China's threatened retaliatory "tariffs on $50 billion worth of United States exports" motivated his decision, instructed USTR to consider imposing additional duties on products from China with an estimated trade value of $200 billion – despite USTR

having not yet implemented List 1 and List 2.  THE WHITE HOUSE, *Statement from the President Regarding Trade with China* (June 18, 2018), *available at* https://www.whitehouse.gov/briefings-statements/statement-president-regarding-trade-china-2/ ("This latest action by China clearly indicates its determination to keep the United States at a permanent and unfair disadvantage, which is reflected in our massive $376 billion trade imbalance in goods. This is unacceptable.").

36.    USTR then stated that it would design the newly proposed duties to address China's threatened retaliatory measures, rather than to specifically address any the harms identified in its Section 301 investigation.  OFFICE OF THE UNITED STATES TRADE REPRESENTATIVES, *USTR Robert Lighthizer Statement on the President's Additional China Trade Action* (June 18, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/june/ustr-robert-lighthizer-statement-0 (explaining that, although Lists 1 and 2 "were proportionate and responsive to forced technology transfer and intellectual property theft by the Chinese" identified in the Section 301 investigation, the proposed duties for a third list of products were necessary to respond to the retaliatory and "unjustified tariffs" that China may impose to target "U.S. workers, farmers, ranchers, and businesses").

37.    China retaliated by imposing 25% *ad valorem* tariffs on $50 billion in U.S. goods implemented in two stages of $34 billion and $16 billion on the same

dates the United States began collecting its own 25% tariffs under List 1 (July 6, 2018) and List 2 (August 23, 2018).

38.    On July 17, 2018, USTR published notice of its proposal to "modify the action in this investigation by maintaining the original $34 billion and the proposed $16 billion actions, and by taking a further, supplemental action" in the form of "an additional 10 percent *ad valorem* duty on [a list of] products [from] China with an annual trade value of approximately $200 billion." *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 33,608, 33,608 (July 17, 2018).  USTR invoked Section 307(a)(1)(C) of the Trade Act, pursuant to which USTR "may modify or terminate any action, subject to the specific direction, if any, of the President with respect to such action, . . . if . . . such action is being taken under [Section 301(b)] of this title and is no longer appropriate." *Id.* at 33,609.  USTR initially set a deadline of August 17, 2018, for initial comments; August 20-23, 2018, for a public hearing; and August 30, 2018, for rebuttal comments.  *Id*. at 33,608.

39.    In its notice, USTR confirmed that it had relied on China's decision to impose "retaliatory duties" as the primary basis for its proposed action.  *Id*. at 33,609. USTR explicitly tied the $200 billion in its proposed action to the level of retaliatory duties imposed by China on U.S. imports.  *Id.*  Although it pointed to China's

retaliatory measures, USTR did not identify any increased burdens or restrictions on U.S. commerce resulting from the unfair practices that USTR had investigated.  *See id*.

40.    On July 10, 2018, former Ambassador Lighthizer stated that the proposed action came "[a]s a result of China's retaliation and failure to change its practice."  OFFICE OF THE UNITED STATES TRADE REPRESENTATIVES, *Statement by U.S. Trade Representative Robert Lighthizer on Section 301 Action* (July 10, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/july/statement-us-trade-representative.

41.    On the same day, the former President Trump suggested that the United States' trade imbalance with China supported the decision.  @realDonaldTrump, TWITTER (July 10, 2018, 9:17 PMEDT), https://twitter.com/realDonaldTrump/status/1005982266496094209.  Over the following weeks, the former President repeatedly voiced his frustration in various Twitter posts about China's alleged currency manipulation and monetary policy, as well as his ongoing dissatisfaction with China's retaliatory tariffs and the persistent trade imbalance between the two countries.

42.    Within days of these statements, former Ambassador Lighthizer announced that, in light of China's retaliatory duties, USTR would propose to increase the additional duty from 10% to 25% *ad valorem*. OFFICE OF THE

UNITED STATES TRADE REPRESENTATIVES, *Statement by U.S. Trade Representative Robert Lighthizer on Section 301 Action* (Aug. 1, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/pressreleases/2018/august/statement-us-trade-representative. Rather than addressing the practices that USTR investigated pursuant to Section 301 of the Trade Act, he stated that China "[r]egrettably . . . illegally retaliated against U.S. workers, farmers, ranchers and businesses." *Id.*

43.    On August 7, 2018, USTR formally proposed "raising the level of the additional duty in the proposed supplemental action from 10 percent to 25 percent." *Extension of Public Comment Period Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 38,760, 38,760 (Aug. 7, 2018).   USTR also set new dates for a public hearing over six days ending on August 27, 2018. See, *id.*; *see also* OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Public Hearings on Proposed Section 301 Tariff List* (Aug. 17, 2018) (modifying hearing schedule), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/august/public-hearings-proposed-section-301.

44.    At the same time, USTR adjusted the deadlines for the submission of written comments, setting September 6, 2018 – less than a month later – as the new

deadline for both initial *and* rebuttal comments from the public. 83 Fed. Reg. at 38,761.  That adjustment, deviating from its past practices, prevented both USTR and the public from considering initial comments at the hearing, and left insufficient time for interested parties to review and respond to the initial comments filed by other parties.  USTR also limited each hearing participant to five minutes. Docket No.  USTR-2018-0026,  https://beta.regulations.gov/document/USTR-2018-0026-0001. Despite those restrictions, approximately 350 witnesses appeared at the six-day hearing, and the public submitted over 6,000 comments.  *Id.*

45.    On September 17, 2018, just eleven days after receiving thousands of final comments from the public, former President Trump announced that he had directed USTR "to proceed with placing additional tariffs on roughly $200 billion of imports from China."  THE WHITE HOUSE, *Statement from the President* (Sep. 17,  2018),  https://www.whitehouse.gov/briefings-statements/statement-from-the-president-4/.  In these remarks, former President made clear that China's response to the $50 billion tariff action (*i.e.*, List 1 and List 2 duties) motived his decision and he immediately promised to proceed with "phase three" of the plan—an *additional $267 billion tariff action* – "if China takes retaliatory action against our farmers or other industries." *Id*.

46.    On September 21, 2018, following the former President's announcement, USTR published notice of the final list of products subject to an

additional duty, a list commonly known as "List 3."  83 Fed. Reg. at 47,974.  The

tariffs began at 10% *ad valorem* tariff that was set to rise automatically to 25% on

January 1, 2019.  *Id.*  USTR determined that the List 3 duties would apply to all

listed products that enter the United States from China on or after September 24,

2018.  *Id.*  USTR did not respond to any of the over 6,000 comments that it received

or any of the testimony provided by roughly 350 witnesses.  *Id.*

47.    As legal support for its action, USTR for the first time cited to Section

307(a)(1)(B) of the Trade Act, which provides that USTR "may modify or terminate

any action, subject to the specific direction . . . of the President . . . taken under

Section 301 if . . . the burden or restriction on United States commerce of the denial

of rights, or of the acts, policies, or practices, that are the subject of such action has

increased or decreased."  *Id.* (brackets omitted).  USTR concluded that the relevant

burden "continues to increase, including following the one-year investigation

period,"  adding that "China's unfair acts, policies, and practices include not just its

specific technology transfer and IP polices referenced in the notice of initiation in

the investigation, but also China's subsequent defensive actions taken to maintain

those policies."  *Id.*  USTR also cited Section 307(a)(1)(C) of the Trade Act, arguing

that China's response to the $50 billion tariff action "has shown that the current

action no longer is appropriate" because "China openly has responded to  the current

action by choosing to cause further harm to the U.S. economy, by increasing duties

on U.S. exports to China." *Id.* at 47,975.

48.    In December 2018, and again in February 2019, the previous Administration announced that it would delay the scheduled increase in the List 3 duty rate from 10 to 25%.    *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 65,198 (Dec. 19, 2018); *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 7,966 (Mar. 5, 2019).

49.    In May 2019, however, USTR announced its intent to raise the tariff rate on List 3 goods to 25%, effective either May 10, 2019 or June 1, 2019, depending on the day of export.    *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 20,459 (May 9, 2019) ("*List 3 Rate Increase Notice*"); *see also Implementing Modification to Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 21,892 (May 15, 2019). The notice cited to China's decision to "retreat from specific commitments agreed to in earlier rounds" of negotiations as the basis for the increase in the duty rate.    *List 3 Rate Increase Notice*, 84 Fed. Reg. at 20,459. As a deviation from its past practice of imposition of new tariffs, USTR did not seek public comment but rather simply announced that the increase would occur. *Id.*

50.    Recognizing that List 3 would cause substantial harm to U.S. companies and consumers, as well as the U.S. economy, USTR in June 2019 invited the public to seek exclusions from List 3 duties on a product-specific basis. *Procedures for Requests to Exclude Particular Products From the September 2018 Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 29,576 (June 24, 2019).

51.    The duties imposed on products covered by List 3 remain in effect as of the date of this Complaint, with the exception of the limited number of products for which USTR granted exclusions from the List 3 duties.  Plaintiff has imported products not subject to exclusions under List 3.

**B.    List 4**

52.    On May 17, 2019, just eight days after it published notice of its decision to increase the duty rate on imports covered by List 3, USTR announced its intent to proceed with yet another list – List 4 – covering more products subject to additional duties. Under USTR's proposal, List 4 would impose an additional duty of 25% *ad valorem* on products worth $300 billion.  *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 22,564, 22,564 (May 17, 2019).  USTR explained that its

decision was motivated by China's retreat from negotiated trade commitments, and China's further retaliatory action against U.S. commerce. *Id.*

53.    As with List 3, USTR invited the public to comment on proposed List 4 and participate in a hearing. The public submitted nearly 3,000 comments. Docket No. USTR-2019-0004, https://beta.regulations.gov/document/USTR-2019-0004-0001. Despite the opportunity to comment, the timeline for participation in the hearing left little room for meaningful input: USTR required witnesses to submit drafts of their testimony by June 10, 2019, a mere seven days before the deadline for fully developed written comments, and then it again limited witnesses to five minutes of testimony at the hearing. *Id*.

54.    On August 1, 2019, the former President Trump  announced that the List 4 tariffs would become effective September 1, 2019, at a rate of 10% *ad valorem*.  As a basis, the President cited to China's failure to abide with agricultural purchases and the failure to reduce exports of fentanyl. @realDonaldTrump, TWITTER (Aug. 1, 2019, 1:26 PM EDT), https://twitter.com/real DonaldTrump/status/1156979446877962243.

55.    On August 20, 2019, USTR issued a final notice adopting List 4 in two tranches. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43,304 (Aug. 20, 2019). List 4A would impose a 10% *ad valorem* duty on

goods worth roughly $120 billion, effective September 1, 2019.  List 4B would impose a 10% *ad valorem* duty on the remaining goods, with limited exclusions, effective December 15, 2019.  *Id*. at 43,305.  Once again, USTR did not address any of the nearly 3,000 comments submitted or any of the testimony provided by witnesses, other than to claim that its determination "takes account of the public comments and the testimony."  *Id*.

56.    As legal support for its action, USTR again cited to Section 307(a)(1)(B) and (C) of the Trade Act, stating that it may modify its prior action taken pursuant to Section 301 of the Trade Act if (1) "[t]he burden or restriction on United States commerce" imposed by the investigated foreign country practice "has increased or decreased," or (2) "the action . . . is no longer appropriate."  *Id*. at 43,304.  Instead of finding any increased burden on U.S. commerce from the practices that were the subject of USTR's investigation, however, USTR merely pointed to "China's subsequent defensive actions taken to maintain those unfair acts, policies, and practices as determined in that investigation," including retaliatory tariffs on U.S. imports, retreating from commitments during negotiations, and devaluing its currency.  *Id*.

57.    Ten days later, on August 30, 2019, USTR published notice of its decision to increase the tariff rate applicable to goods covered by List 4A and List 4B from 10% to 15%.  *Notice of Modification of Section 301 Action: China's Acts,*

*Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 45,821 (Aug. 30, 2019).  USTR explained that it increased the tariff rate because, shortly after it finalized List 4A and List 4B, "China responded by announcing further tariffs on U.S. goods."  *Id.* at 45,822.  USTR again cited to China's retreat from its negotiation commitments and devaluation of its currency as grounds for the action.  *Id*.

58.    On December 18, 2019, as a result of successfully negotiating a limited trade deal with China, USTR published notice that it would suspend the imposition of additional duties of 15 percent on products of China covered by List 4B.  *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 69,447, 69,447 (Dec. 18, 2019).  USTR also stated its intent to reduce the tariff rate applicable to products covered by List 4A, *id.*, an action that ultimately became effective on February 14, 2020, when USTR halved the applicable duty rate, *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 3,741 (Jan. 22, 2020).

59.  In the months that followed, the United States and China implemented the limited trade deal that they negotiated near the end of 2019.  OFFICE OF THE UNITED STATES TRADE REPRESENTATIVES, *United States and China Reach*

*Phase One Trade Agreement* (Dec. 13, 2019). During that time, Defendants declined to impose additional duties on imports covered by List 4B, presumably because China had agreed to some unrelated conditions under the limited trade deal.

60.   The duties imposed on products covered by List 4A remain in effect as of the date of this Complaint, with the exception of the limited number of products for which USTR granted exclusions.  *Notice of Product Exclusions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 48,627 (Aug. 11, 2020). Plaintiff has imported products not subject to exclusions under List 4A.  The proposed duties on products covered by List 4B remain suspended.

## STATEMENT OF CLAIMS

## COUNT ONE

## (DECLARATORY JUDGMENT – VIOLATION OF THE TRADE ACT OF 1974)

61.   Paragraphs 1 through 60 are incorporated by reference.

62.   The Declaratory Judgment Act authorizes any court of the United States to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).

63.   The Trade Act of 1974 does not authorize the actions taken by Defendants in the implementation of List 3 and List 4 tariffs.

64. Pursuant to Section 301 of the Trade Act, USTR may impose tariffs when it determines that "an act, policy, or practice of a foreign country is unreasonable or discriminatory and burdens or restricts United States commerce, and action by the United States is appropriate." 19 U.S.C. § 2411(b).  USTR failed to predicate its action giving rise to List 3 and List 4 on any such determination.

65. If USTR concludes upon investigation that a foreign country maintains an unfair trade practices, Section 304 of the Trade Act requires USTR to "determine what action, if any," to take within "12 months after the date on which the investigation is initiated." 19 U.S.C. § 2414(a)(1)(B), (2)(B).  USTR's action giving rise to List 3 occurred in September 2018, over a year after USTR initiated the underlying Section 301 investigation on August 18, 2017. USTR's action giving rise to List 4 occurred in August 2019, more than two years after USTR initiated the underlying Section 301 investigation.

66. Section 307 of the Trade Act authorizes USTR to "modify or terminate" an action taken pursuant to Section 301(b) of the Trade Act when the burden imposed on U.S. commerce from the foreign country's investigated unfair acts, policies, or practices increases or decreases. 19 U.S.C. § 2417(a)(1)(B). Section 307 of the Trade Act, however, does not authorize Defendants to increase tariffs for reasons unrelated to the acts, policies, or practices that USTR investigated pursuant to Section 301 of the Trade Act. Congress did not authorize USTR to escalate its

focused investigatory findings into an open-ended trade war.

67. Section 307 of the Trade Act also authorizes USTR to "modify or terminate" an action taken pursuant to Section 301(b) of the Trade Act if the initial action taken by USTR "is no longer appropriate." 19 U.S.C. § 2417(a)(1)(C). Section 307 of the Trade Act does not authorize Defendants to *increase* tariff actions that are no longer "appropriate," but rather only to delay, taper, or terminate such actions.

68. Plaintiff is therefore entitled to a declaratory judgment that Defendants' actions giving rise to List 3 and List 4 are *ultra vires* and contrary to law.

## COUNT TWO

## (VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT)

69. Paragraphs 1 through 60 are incorporated by reference.

70. The APA authorizes the Court to hold unlawful and set aside any agency action that is: "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence." 5 U.S.C. § 706(2).

71. Defendants exceeded their authority as delegated under the Trade Act in promulgating List 3 and List 4, and therefore has acted "not in accordance with the

law" and "in excess of statutory authority" for the reasons set forth in Count One of this Complaint.

72.    Defendants failed to present any evidence for any asserted "increased burden" from China's intellectual property policies and practices that were the subject of USTR's Section 301 investigation.

73.    Defendants also promulgated List 3 and List 4a in an arbitrary and capricious manner as they did not provide a sufficient opportunity for comment, failed to meaningfully consider relevant factors when making their decisions, and failed to adequately explain their rationale. Defendants' decision-making resulted in the unlawful imposition of tariffs on imports covered by List 3, whose value equals $200 billion, and List 4, whose value equals $300 billion.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully requests that this Court:

(1)  declare that the tariffs on products covered by List 3 and List 4 are unauthorized by the Trade Act and contrary to law;

(2)  declare that Defendants promulgated List 3 and List 4 in violation of the standards of the APA as the actions were arbitrary and capricious and in violation of constitutional standards;

(3)  declare void and vacate the determinations imposing tariffs on products subject to List 3 and List 4;

(4)  permanently enjoin Defendants from applying List 3 and List 4 against Plaintiff and collecting any past and future duties from

Plaintiff pursuant to List 3 and List 4;

(5) order and direct Defendants to refund all duties assessed pursuant to List 3 and List 4, with interest as provided by law;

(6) award Plaintiff their costs and reasonable attorney fees; and

(7) grant such other and further relief as may be just and proper.

Respectfully submitted,

NAKACHI ECKHARDT & JACOBSON, P.C.

*/s/ Alena A. Eckhardt*
Alena A. Eckhardt
50 California Street
Suite 1500
San Francisco, CA  94111
eckhardt@tradelawcounsel.com

*Counsel for Plaintiff*

Dated: May 20, 2025

## **CERTIFICATE OF SERVICE**

Pursuant to U.S. Court of International Trade Rule 4(b) and (h), I hereby certify that copies of Plaintiff's Summons and Complaint will be served on the following parties by certified mail, return receipt requested:

Attorney-In-Charge
International Trade Field
Office Commercial
Litigation Branch
U.S. Department of
Justice 26 Federal
Plaza
New York, NY 10278

Attorney-In-Charge
Commercial Litigation
Branch
U.S. Department of
Justice 1100 L Street,
NW Washington, DC
20530

General Counsel Greta Peisch
Office of the General Counsel
Office of the U.S. Trade
Representative 600 17th Street, NW
Washington, DC 20508

Chief Counsel Scott K.
Falk Office of Chief
Counsel
U.S. Customs & Border
Protection 1300 Pennsylvania
Ave., NW Washington, DC
20229

   _/s/ Alena A. Eckhardt_
Alena A. Eckhardt